**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 26-cv-21178-JB**

CARLOS DE ARMAS CABRERA,

      Petitioner,

v.

ASSISTANT FIELD OFFICE DIRECTOR,
KROME NORTH
SERVICE PROCESSING CENTER, *et al.*,

      Respondents.

_____/

## <u>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS</u>

**THIS CAUSE** comes before the Court upon *pro se* Petitioner Carlos De Armas Cabrera's Verified Petition for Writ of Habeas Corpus (the "Petition").  ECF No. [1]. Respondents filed a Response in opposition to the Petition and Petitioner filed a reply. ECF Nos. [8], [10].  The parties also submitted supplemental responses.  ECF Nos. [15], [16].  Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **GRANTED IN PART**.

### I.   BACKGROUND

Petitioner is a Cuban citizen who arrived in the United States on October 20, 2004, through Key West, Florida.  ECF No. [8-2] at 1.  On October 21, 2004, Customs and Border Protection ("CBP") first encountered Petitioner and issued him a Notice to Appear ("NTA"), charging Petitioner with inadmissibility under sections

1

212(a)(6(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as "an alien present in the United States without being admitted or paroled" and thereby initiated removal proceedings against Petitioner. ECF No. [8-3]. The NTA was later canceled by Immigration and Customs Enforcement ("ICE"). ECF No. [8-4] ¶9. CBP then paroled Petitioner into the United States pursuant to INA § 212(d)(5) and released him from custody. ECF Nos. [8-4] ¶ 10, [8-5]. On March 2, 2006, Petitioner filed a Form I-485 Application to Register Permanent Residence or Adjust Status, which was retroactively approved to October 21, 2004, under the Cuban Adjustment Act. ECF Nos. [8-4] ¶ ¶11−12, [8-6].

On January 10, 2017, Petitioner was charged with shooting at/into an occupied vessel/aircraft/vehicle and criminal mischief of $1,000 or more and later sentenced to one year community control, two years of probation, restitution and anger management. ECF Nos. [8-4] ¶14, [8-7]. On May 15, 2025, following his arrest for domestic battery, ICE encountered Petitioner at the Turner Guilford Knight Correctional Center and DHS issued Petitioner another NTA charging him as removable from the United States pursuant to sections 237(a)(2)(C) and 237(a)(2)(A)(iii) of the INA. ECF Nos. [8-1], [8-4] ¶¶16, 19. On June 4, 2025,[1] ICE took custody of Petitioner. ECF Nos. [8-4] ¶ 18, [8-11] at 4. On July 1, 2025, Petitioner had a master calendar hearing where he conceded the charges of removal and the immigration judge found that he was removable. ECF No. [8-4] ¶20. On

---

[1] In his Petition, Petitioner states that he has been in immigration custody since May 11, 2025. ECF No. [1]. However, Respondents claim that ICE encountered Petitioner on May 11, 2025, and took him into custody on June 4, 2025. ECF No. [8] at 3.

2

August 14, 2025, Petitioner filed an application for relief from removal and on October 17, 2025, the immigration court denied his application and issued an order of removal, directing that Petitioner be removed to Cuba.  ECF Nos. [1-3] at 1, [8-4] ¶¶21−22, [8-12].  On October 30, 2025, Petitioner filed an appeal of the immigration judge's decision.  ECF Nos. [1-3] at 4, [8-4] ¶23.  Petitioner's appeal remains pending.

On February 20, 2026, Petitioner filed the instant Petition in which he asserts two counts.  ECF No. [1].  Count One alleges that he is the subject of prolonged and indefinite detention in violation of due process and his removal to Cuba is not reasonably foreseeable.  *Id*. at 6.  Count Two alleges that his continued detention is arbitrary and a violation of due process.  *Id*.  Petitioner asks the Court to "grant a writ of habeas corpus and order [his] immediate release from custody under reasonable conditions of supervision." *Id*. at 7. Alternatively, Petitioner requests that "the Court order a meaningful bond hearing before an Immigration Judge where the government must prove by clear and convincing evidence that [his] continued detention is justified and that [his] removal is significantly likely in the reasonably foreseeable future." *Id*.

On February 26, 2026, Respondents filed their Response to the Petition.  ECF No. [8].  Respondents argue that Petitioner is subject to mandatory detention, pending removal, under 8 U.S.C. § 1226(c) based on his prior criminal history.  *Id*. at 4–8. Respondents also argue that Petitioner's due process claim under *Zadvydas v. Davis* fails because his application for relief is still pending on appeal, therefore, the order of removal is not administratively final.  *Id*. at 9–10.  Given the appeal,

3

Respondents argue that they have not had the opportunity to remove Petitioner and therefore Petitioner cannot meet his burden under *Zadvydas*.

On March 2, 2026, Petitioner filed his reply.  ECF No. [10].  In the Reply, Petitioner seeks to correct the record as to his criminal history, specifically noting that the object involved in the incident was a rock "and not a lethal weapon."  *Id.* Petitioner also argues that the pending appeal does not justify his prolonged detention.  *Id.*

On May 26, 2026, this Court ordered supplemental briefing as to the applicability of *Sopo v. U.S. Att'y Gen.,* 825 F.3d 1199 (11th Cir. 2016), to the Petition. ECF No. [14].  On May 28, 2026, Respondents filed supplemental briefing arguing that *Sopo* was inapplicable and that even if it applied, Petitioner's detention would still be constitutional.  ECF No. [15].  On June 8, 2026, Petitioner submitted a sur-reply in which he argues that his continued detention of more than a year warrants judicial review and is approaching the outer bounds of what courts have found constitutionally permissible.  ECF No. [16].

## II.   ANALYSIS

District courts have the authority to grant writs of habeas corpus.  *See* 28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The Court's jurisdiction

extends to challenges involving immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The parties do not dispute that Petitioner is being held pursuant to 8 U.S.C. § 1226(c).  *See* ECF Nos. [1], [8].  The dispute lies in whether his detention has been unconstitutionally prolonged.  The Fifth Amendment, which applies to aliens, provides that "[n]o person shall be . . . . deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  Thus, aliens are entitled to due process of law in deportation proceedings.  *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Under section 1226(c), "'[t]he Attorney General shall take into custody any alien' who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (quoting 8 U.S.C. § 1226(c)(1)). "Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens–including those convicted of an aggravated felony." *Demore,* 538 U.S. 510 at 517–18.

In *Demore v. Kim,* the U.S. Supreme Court addressed the constitutionality of mandatory detention under § 1226(c). The Court relied on the data provided by the Executive Office of Immigration Review, which reflected that section 1226(c) detention lasted "roughly a month and a half in the vast majority of cases in which it

is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 530.  The Court concluded that a six-month detention under section 1226(c) was constitutional because "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id*. at 558–59. The Court explained that this brief and limited detention was constitutional because, as a practical matter, it is a necessary aspect of the deportation process. *Id*. at 523. In his concurrence, Justice Kennedy emphasized the importance of a temporal limitation on pre-removal detention, stating that if an alien's "continued detention became unreasonable or unjustified," the alien could be entitled to "an individualized determination as to his risk of flight and dangerousness." *Id*. at 532.

Subsequently, in *Jennings v. Rodriguez*, the Court considered whether section 1226 requires that aliens "be given a bond hearing every six months and that detention beyond the initial 6–month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." 583 U.S. at 292.  Although the Court concluded that section 1226 does not impose a six-month limitation on detention, it declined to consider whether prolonged pre-removal detention becomes, at some point, unconstitutional.  *Id*. at 311.

Since *Jennings,* courts in this Circuit have continued to employ a fact-based analysis in determining whether the prolonged nature of pre-removal detention pursuant to section 1226 necessitates a detention hearing.  *See Gabrius v. Dep't of Homeland Sec.,* No. 24-22680-CIV, 2024 WL 5046042 (S.D. Fla. Sept. 10, 2024)

(finding that petitioner was entitled to a hearing where he was detained for thirty-three months); *Stephens v. Ripa,* No. 1:22-CV-20110, 2022 WL 1110104 (S.D. Fla. Feb. 18, 2022) (finding that petitioner was entitled to a pre-removal detention hearing where he was detained for over two years), *report and recommendation adopted in part, rejected in part,* No. 22-20110-CIV, 2022 WL 621596 (S.D. Fla. Mar. 3, 2022); *Rogers v. Ripa,* No. 1:21-CV-24433-JLK, 2022 WL 708493 (S.D. Fla. Jan. 22, 2022), *report and recommendation adopted,* No. 1:21-CV-24433-JLK, 2022 WL 574389 (S.D. Fla. Feb. 25, 2022) (granting petition where petitioner had been in respondents' custody for over one year); *Warsame v. Meade,* No. 20-CV-22401-CMA, 2020 WL 13551825, at *4 (S.D. Fla. Aug. 18, 2020) (granting petition where petitioner was detained for nearly twelve months pending appeal); *Hamilton v. Acosta,* No. 20-21318-CV, 2020 WL 3036782, at *3–6 (S.D. Fla. May 8, 2020), *report and recommendation adopted,* 2020 WL 3035350 (S.D. Fla. June 4, 2020) (conducting an as-applied analysis to a constitutional challenge to pre-removal detention under Section 1226).

Courts have looked to the multi-factor analysis found in the Eleventh Circuit's decision in *Sopo* (*Sopo I*) for guidance in determining if prolonged detention under section 1226(c) does, in fact, violate an alien's right to procedural due process.[2] *See*

---

[2] Despite *Sopo 1* being vacated by the Supreme Court's decision in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), courts within this Circuit continue to rely on it as persuasive authority in determining whether prolonged pre-removal detention passes constitutional muster. *See e.g., Gabrius v. Dep't of Homeland Sec.,* No. 24-22680-CIV, 2024 WL 5046042 (S.D. Fla. Sept. 10, 2024); *Stephens v. Ripa,* No. 22-CV-20110-JEM, 2022 WL 621596, at *2 (S.D. Fla. Mar. 3, 2022); *Warsame v. Meade,* No. 20-CV-22401-CMA, 2020 WL 13551825, at *3 (S.D. Fla. Aug. 18, 2020).

*Sopo v. U.S. Att'y Gen.,* 825 F.3d 1199 (11th Cir. 2016)*, vacated,* 890 F.3d 952 (11th Cir. 2018).  The *Sopo* factors include: (1) "the amount of time that the criminal alien has been in detention without a bond hearing"; (2) "why the removal proceedings have become protracted"; (3) "whether it will be possible to remove the criminal alien after there is a final order of removal"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention"; (6) "the total length of the detention"; (7) "the foreseeability of proceedings concluding in the near future (or the likely duration of future detention)"; (8) "the period of the detention compared to the criminal sentence"; (9) "the promptness (or delay) of the immigration authorities or the detainee"; and (10) "the likelihood that the proceedings will culminate in a final removal order." *See Sopo*, 825 F.3d at 1217–19 (quotation marks and citations omitted).  These factors are "not exhaustive" and courts "must consult the record and balance the government's interest in continued detention against the criminal alien's liberty interest." *Id.* at 1218−1219.

In evaluating Petitioner's circumstances, the undersigned finds that Petitioner's detention has become unreasonably prolonged, and he is entitled to a bond hearing.  The first *Sopo* factor is how long the criminal alien has been in detention without a bond hearing.  *Sopo*, 890 F.3d at 1217.  The Eleventh Circuit noted that detention of a criminal alien without bond may often become unreasonable by the one-year mark.  *Id.*  The *Sopo* court also explained that the need for a bond

inquiry is likely to arise in the six-month to one-year window, at which time a court must determine whether the purposes of the statute (preventing flight and criminal acts) are fulfilled, and whether the government is incarcerating the alien for reasons other than flight risk or dangerousness. *Id.* The Court noted that the government need not automatically free a criminal alien who obtains a bond hearing; but the government must afford the alien an individualized bond hearing. *Id.* at 1218. Here, while Petitioner filed his Petition approximately eight months into his detention, he has now been detained a little beyond the one-year mark. As such, the first *Sopo* factor weighs in favor finding that Petitioner's detention has been unreasonably prolonged.

A second factor in the evaluation is the reason the removal proceedings have become protracted. Since Petitioner asserted his right to appeal his order of removal, his release from detention has been delayed pending the conclusion of that appeal. ECF No. [1-3] at 4. The Eleventh Circuit has noted that "[c]ourts should consider whether the government or the criminal alien have failed to participate actively in the removal proceedings or sought continuances and filing extensions that delayed the case's progress." *Sopo*, 825 F.3d at 1218. The Court also specifically stated that "aliens should not be punished for pursuing avenues of relief and appeals." *Id.* (citation omitted). Here, Petitioner's immigration proceedings have become protracted through no fault of either Petitioner or Respondents. Petitioner has diligently pursued his immigration case on the merits and exercised his right to file

an appeal with the Board of Immigration Appeals. As such, this factor does not weigh in favor of either party.

The third *Sopo* factor addresses whether it will be possible to remove the criminal alien after there is a final order of removal. In their supplemental briefing, Respondents provided no response as to this factor. *See* ECF No. [15]. Given that Petitioner was previously ordered removed to Cuba, it is probable that his removal would most likely have to be effectuated through a third country. *See e.g., Guerra-Castro v. Parra,* No. 1:25-CV-22487, 2025 WL 1984300 (S.D. Fla. July 17, 2025) (noting that petitioners of Cuban origin are often removed through a third country). However, it is likely that Petitioner's detention will be further prolonged as Respondents will need to seek approval from that third country before effectuating his removal. Therefore, this factor weighs in favor of granting a bond hearing.

The fourth *Sopo* factor examines whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable. Respondents also do not address this factor. Petitioner was sentenced to one year community control, two years of probation, restitution, and anger management for his previous conviction, yet he has been detained for more than one year. Accordingly, this factor favors Petitioner.

The fifth *Sopo* factor similarly weighs in Petitioner's favor. This factor considers whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention. *Id.* Petitioner has been detained primarily at the Krome North Service Processing Center, which is an ICE

detention facility.  Respondents did not address this factor in their response and have not shown that Petitioner's detention is meaningfully different from a penal institution or criminal detention. This factor, thus, weighs in Petitioner's favor.

The sixth factor addresses the total length of detention. In their supplemental brief, Respondents acknowledged that Petitioner had been detained for approximately 12 months. ECF No. [15] at 5. As of the date of this Order, Petitioner has now been detained 13 months. This factor also weighs in Petitioner's favor.

The seventh factor analyzes the foreseeability of the proceedings concluding in the near future. Respondents have not addressed this factor, nor have they provided a status as to Petitioner's appeal. Accordingly, the record is not sufficiently developed to permit the Court to evaluate this factor.

The eighth factor analyzes the period of detention compared to the criminal sentence. As stated above, there is no indication that Petitioner was sentenced to detention in his criminal case, while here Petitioner has been detained for over a year. Thus, this factor weighs in Petitioner's favor.

The ninth factor looks to the promptness (or delay) of the immigration authorities or the detainee. Again, the Court already determined that Petitioner's detention has been prolonged due to his appeal. The record does not seem to indicate that Respondents have delayed in any aspect related to Petitioner's pre-removal detention, nor can Petitioner be punished for validly pursuing an appeal. Accordingly, this factor is neutral.

11

The final factor analyzes the likelihood that the proceedings will culminate in a final removal order. Respondents argue that they have not had an opportunity to enforce Petitioner's non-final order of removal due to his aforementioned pending appeal. ECF No. [15]. at 6. Given that the Court cannot anticipate how the Board of Immigration Appeals will rule on Petitioner's appeal, it is unable to determine whether his immigration proceedings will culminate in a final order of removal. Thus, this factor does not weigh in favor of either party.

In sum, the majority of *Sopo* factors weigh in Petitioner's favor. The Court is mindful that Petitioner has been detained for over twelve months and, absent a bond hearing, will surely remain detained until the Board of Immigration Appeals decides his appeal. *See e.g.*, *Warsame v. Meade*, No. 20-22401-CIV, 2020 WL 13551825 (S.D. Fla. Aug. 18, 2020) (granting habeas relief where detention was near the 12-month mark). Accordingly, based upon on the specific facts of this case, the Court concludes that Petitioner's continued pre-removal detention without a hearing violates his due process rights.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Petitioner's Verified Petition for Writ of Habeas Corpus, ECF No. [1], is **GRANTED IN PART** as set forth herein. Respondents shall afford Petitioner an individualized bond hearing **within seven (7) days** of this Order or otherwise release Petitioner. Respondents shall also, within 24 hours of the bond hearing, file a Status Report

indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of July, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**

13